UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
                                )
DENISE A. BANKS,                )
                                )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No. 07-1807 (RWR)
                                )
TOM VILSACK,                    )
                                )
        Defendant.              )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiff Denise A. Banks, an African-American woman born in 1949, brings this action against the Secretary[1] of the United States Department of Agriculture ("USDA") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., alleging that while employed at the USDA, she was harassed and discriminated against because of her race, gender, and age, and retaliated against because of her protected equal employment opportunity ("EEO") activities.  At the close of discovery, the USDA moved for summary judgment and Banks cross-moved for partial summary judgment.  Because there is a genuine issue of material fact as to whether Banks was discriminatorily removed from the Senior Executive Service ("SES"), the USDA's and Banks's motions for summary judgment will be denied as to this

_____

[1] Secretary Tom Vilsack is substituted as the defendant under Federal Rule of Civil Procedure 25(d).

-2-

claim.  The USDA's motion for summary judgment will be granted as

to Banks's claim that she was subjected to a hostile work

environment and as to several of her retaliation claims[2] because

there is no genuine dispute about material facts and the USDA is

entitled to judgment as a matter of law.  The USDA's motion will

be denied as to Banks's other discrimination and retaliation

claims.

<u>BACKGROUND</u>

Banks is an African-American woman who was born in 1949.

Am. Compl. ¶ 1; <u>see also</u> Pl.'s Mot. for Partial Summ. J. & Opp'n

to Def.'s Mot. for Summ. J. ("Pl.'s Mot."), Pl.'s Stmt. of Facts

Not in Genuine Dispute ("Pl.'s Stmt.") ¶ 1.  Banks began working

at the USDA in February 1999 as the Deputy Director for Civil

Rights (Employment) at the SES level.  Def.'s Mot. for Summ. J.

("Def.'s Mot."), Def.'s Material Facts Not in Genuine Dispute

("Def.'s Stmt.") ¶ 1.  As the Deputy Director, Banks supervised

several managers in the division.  <u>Id.</u>  Banks was supervised by

Rosalind Gray.  <u>Id.</u> ¶ 2.

Banks was subject to a one-year probationary period when she

was appointed as the Deputy Director.  <u>Id.</u> ¶ 1.  Her November

1999 performance appraisal for the probationary period stated

---

[2] Banks conceded her claims that the USDA retaliated against
her for engaging in protected EEO conduct by removing her from
the SES, issuing her a letter of direction, and giving her a low
performance rating in 2005.  <u>See</u> Def.'s Reply in Further Supp. of
His Mot. for Summ. J. & Opp'n to Pl.'s Partial Mot. for Summ. J.
("Def.'s Reply & Opp'n") at 2.

-3-

that she did not meet several critical elements of her position
and that her overall performance was rated as "unsatisfactory."
Id. ¶ 8.  As a result of her poor performance rating, Gray
recommended that Banks be terminated.  Id.; see also Pl.'s Stmt.
¶ 5.  Notwithstanding Gray's recommendation, Assistant Secretary
for Administration, Paul Fiddick, removed Banks from the SES
position in January 2000 but reassigned her to a GS-15 position,
Special Assistant to the Deputy Director for Programs in the
Office of Civil Rights.  Def.'s Stmt. ¶ 8; see also Pl.'s Stmt.
¶ 6.

Banks alleges that she was so distraught over being removed
from her SES position that she took approximately two weeks of
sick leave after receiving Fiddick's letter.  Def.'s Stmt. ¶ 10;
Am. Compl. ¶ 18.  Although Banks alleges that her leave was
approved and that she submitted all of the medical documentation
supporting it, she received a Letter of Counseling from her new
supervisor, Fred Isler, when she returned to work stating that he
was displeased that Banks had been absent for two weeks and he
had not known where she was.  Def.'s Stmt. ¶ 10.

From 2000 to 2004, Banks received overall performance
ratings of "outstanding" on her performance appraisals.  See
Pl.'s Stmt. ¶ 10.  In light of her performance ratings, Banks
received cash performance awards in the amount of $4000.  Id.;
see Am. Compl. ¶ 40.  In August 2004, Sadhna True became the
Director for Civil Rights and Employment at the USDA.  Am. Compl.

-4-

¶ 24.  In that capacity, True became Banks's second line supervisor.  Id.  In 2005, Banks received the lower performance rating of "Superior"; in 2006 and 2007, she received the even lower rating of "Fully Successful."  Def.'s Stmt. ¶ 16; Def.'s Mot., Ex. 17 (Banks 2005 Performance Appraisal) at 27, Ex. 18 (Banks 2006 Performance Appraisal) at 29; see also Am. Compl. ¶¶ 36-37, 44-45, 47.  As such, Banks received reduced or no monetary performance awards from 2005 to 2007.

In July 2007, Banks received a Letter of Direction from True.  Def.'s Stmt. ¶¶ 17-20.  The letter stated that Banks had not been achieving her performance goals for her position and gave Banks specific instructions to improve her performance and deadlines to meet.  Id.  The letter warned that failure to meet the requirements in the letter "may result in further conduct or performance-based action."  Def.'s Mot., Ex. 7 (Letter of Direction) at 34.  After receiving the letter, Banks "was required to work extremely long hours to meet all the requirements contained in the Letter of Direction[.]"  Am. Compl. ¶ 49.

In November 2007, Michael Watts, the acting Director for Civil Rights, reassigned Banks from her Division Chief position to the position of special assistant to the acting Director for Civil Rights.  Def.'s Stmt. ¶ 24.[3]

---

[3] The Plaintiff's Genuine Disputes of Material Fact does not dispute the defendant's identification of the position to which

-5-

From 1999 to 2007, Banks filed three EEO complaints.  Am.
Compl. ¶¶ 8-11.  Banks also supported other employees' EEO
complaints by filing affidavits and testifying on their behalf.
Id. ¶¶ 28-34.

In Banks's five-count amended complaint she alleges that her
supervisors' conduct described above was discriminatory and
retaliatory.  The amended complaint alleges that Banks was
retaliated against because of her protected EEO activities (Count
One), and was discriminated against on the basis of race (Count
Two), sex (Count Three), and age (Count Four).  It also claims
that Banks was subjected to a hostile work environment because of
her race, color, sex, age, and prior EEO activity (Count Five).

The USDA moves for summary judgment arguing that Banks
cannot make out a prima facie case of disparate treatment,
retaliation, or hostile work environment.  The USDA further
argues that it has offered legitimate business reasons for its
actions and Banks cannot show that those reasons are pretextual.
Def.'s Mot., Def.'s Mem. of P. & A. in Supp. of His Mot. for
Summ. J. ("Def.'s Mem.") at 1.  Banks opposes and cross-moves for
summary judgment arguing that she is entitled to judgment as a
matter of law that her demotion from her SES position was
discriminatory.  Pl.'s Mot. at 1.

---

Banks was reassigned, although Banks's amended complaint
identifies the position as Assistant Secretary for the Office of
Adjudication and Compliance, Am. Compl. ¶ 12.

-6-

DISCUSSION

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" "where the 'evidence is such that a reasonable jury could return a verdict for the non-moving party,' a situation separate and distinct from a case where the evidence is 'so one-sided that one party must prevail as a matter of law.'" Dozier-Nix v. District of Columbia, 851 F. Supp. 2d 163, 166 (D.D.C. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)). To survive a motion for summary judgment, the nonmoving party "must provide evidence showing that there is a triable issue as to an element essential to that party's claim." Arias v. DynCorp, Civil Action No. 01-1908 (RWR), 2013 WL 864566, at *3 (D.D.C. Feb. 6, 2013) (internal quotation marks omitted); see also Moore v. Hartman, 571 F.3d 62, 66 (D.C. Cir. 2009). In considering a motion for summary judgment, a court accepts as true the nonmovant's evidence and draws all "justifiable inferences . . . in his favor." Anderson, 477 U.S. at 255.

I.   DISPARATE TREATMENT

Title VII disparate treatment claims are analyzed under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The same framework applies to age discrimination claims. See Krodel v. Young, 748 F.2d 701, 705

-7-

(D.C. Cir. 1984).  A plaintiff making a disparate treatment claim carries the initial burden to establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To do so, "a plaintiff must show [(1)] that he 'is a member of a protected class,' [(2)] that he 'suffered an adverse employment action,' and [(3)] that 'the unfavorable action gives rise to an inference of discrimination.'"  Youssef v. FBI, 687 F.3d 397, 401 (D.C. Cir. 2012) (quoting Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002)); see also Cuddy v. Carmen, 694 F.2d 853, 857 (D.C. Cir. 1982) (discussing a plaintiff's initial burden in an ADEA case).  "An 'adverse employment action' . . . is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  "An employee must 'experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'"  Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (quoting Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002)).  "[F]ormal criticism or poor performance evaluations are [not] necessarily adverse actions" and they should not be considered as such if they did not "affect[ ] the [employee's] grade or

-8-

salary." <u>Brown v. Brody</u>, 199 F.3d 446, 457-58 (D.C. Cir. 1999)

(internal quotation marks omitted), <u>abrogated on other grounds by</u>

<u>Steele v. Schafer</u>, 535 F.3d 689 (D.C. Cir. 2008).

If a plaintiff makes out a prima facie case, the burden

shifts to the employer to "produc[e] a non-discriminatory

explanation for the challenged personnel action." <u>Ford v. Mabus</u>,

629 F.3d 198, 201 (D.C. Cir. 2010).  If the employer provides a

legitimate, non-discriminatory reason for the action, then the

plaintiff must show "that discriminatory animus was the

determining or but-for cause of the personnel action." <u>Id.</u>  "The

plaintiff may satisfy this burden 'either indirectly by showing

the employer's reason is pretextual or directly by showing that

it was more likely than not that the employer was motivated by

discrimination.'"  <u>Id.</u> (quoting <u>Forman v. Small</u>, 271 F.3d 285,

292 (D.C. Cir. 2001)).

Although the plaintiff bears the initial burden under the

<u>McDonnell Douglas</u> framework, "the prima-facie-case aspect of

<u>McDonnell Douglas</u> is irrelevant when an employer has asserted a

legitimate, non-discriminatory reason for its decision[.]"

<u>Adeyemi v. District of Columbia</u>, 525 F.3d 1222, 1226 (D.C. Cir.

2008).

> Therefore, if an employer asserts a legitimate,
> nondiscriminatory reason for an adverse employment
> action, the district court must conduct one central
> inquiry in considering an employer's motion for summary
> judgment . . . : whether the plaintiff produced
> sufficient evidence for a reasonable jury to find that
> the employer's asserted non-discriminatory reason was

-9-

      not the actual reason and that the employer
      intentionally discriminated against the plaintiff on a
      prohibited basis.

Id. To determine whether a plaintiff has produced sufficient

evidence, a court may consider "(1) the plaintiff's prima facie

case; (2) any evidence the plaintiff presents to attack the

employer's proffered explanations for its actions; and (3) any

further evidence of discrimination that may be available to the

plaintiff (such as independent evidence of discriminatory

statements or attitudes on the part of the employer)." Dunaway

v. Int'l Bhd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir. 2002)

(internal quotation marks omitted).  "Often, the employee

attempts to produce evidence suggesting that the employer treated

other employees of a different race, color, religion, sex, or

national origin more favorably in the same factual

circumstances."  Brady v. Office of Sergeant at Arms, 520 F.3d

490, 495 (D.C. Cir. 2008).

    Banks's amended complaint claims that the USDA discriminated

against her on the basis of race, sex, and age by removing her

from the SES in 2000, demoting her from a supervisory Division

Chief position in 2007, denying her leave, and denying her

performance awards.[4]  Am. Compl. ¶¶ 54-56.  The USDA argues that

---

    [4] The USDA also speaks of Banks's "claim" that she was
discriminated against when she was given the letter of direction
in 2007.  Def.'s Mem. at 25-26.  While Banks's amended complaint
describes the letter as "discriminatory and retaliatory," Am.
Compl. ¶ 51, Banks's amended complaint alleges no such claim in
Counts Two, Three, and Four.  Nevertheless, to the extent that

-10-

it had legitimate non-discriminatory reasons for its decisions to remove Banks from the SES and for Banks's low performance rating in 2006.[5]

The USDA asserts that Banks was removed from the SES because Banks was unable to "meet the requirements of her job as a member of the SES." Def.'s Mem. at 25. The USDA claims that Banks was unable to meet deadlines, manage her staff, and had trouble communicating effectively with her supervisors and staff. The USDA offers Banks's performance appraisal from her probationary

_____

Banks claimed that the letter of direction was discriminatory, this claim fails because the letter was not an adverse employment action. See Baloch v. Kempthorne, 550 F.3d 1191, 1199 (D.C. Cir. 2008)(finding that a letter of counseling that "contained no abusive language, but rather job-related constructive criticism, which can prompt an employee to improve her performance" was not retaliatory under the higher, "materially adverse employment action" standard (internal quotation marks omitted)); see also Letter of Direction at 34 (explaining that the letter "provides feedback regarding [Banks's] performance" and "contains specific instructions and deadlines").

[5] Although the USDA discusses facts related to Banks's claims that the USDA discriminated against her by reassigning her in 2007, see Def.'s Mem. at 15-16, and denying Banks leave, id. at 7-8, and discusses Banks's performance appraisals and awards in the 2005 and 2007 fiscal years, id. at 10-14, the USDA does not argue that there is no genuine dispute of material fact on these claims. Accordingly, to the extent that the USDA moves for summary judgment on these claims, its motion will be denied. The USDA argues that it had a legitimate non-discriminatory reason for giving Banks a lower performance rating in 2006 of "Fully Successful" than the higher rating of "Superior" in 2005. Def.'s Mem. at 26. However, the USDA does not challenge Banks's claim that the USDA discriminatorily denied Banks an "Outstanding" rating in 2006 which would have entitled Banks to a higher performance award. See Am. Compl. ¶¶ 44-45. Thus, summary judgment will not be granted for the USDA on Banks's claim that her 2006 performance rating was discriminatory.

year and related documents as support for its proffered non-
discriminatory reason for removing Banks from the SES.  Id. at 3-
5.  For example, Banks allegedly promised to turn in an
affirmative employment plan.  However, the performance appraisal
states that Banks never submitted the plan.  See Def.'s Mot., Ex.
3 (Banks 1999 SES Appraisal Record ("Banks 1999 Appraisal"),
Suppl. Stmt. for Denise A. Banks ("Banks 1999 Appraisal Suppl."))
at 34.  The performance appraisal also describes how Banks missed
two deadlines to submit training modules.  When Banks finally
submitted the modules, they contained "many factual and technical
errors."  Banks 1999 Appraisal at 32.  Banks also allegedly
failed to submit timely performance evaluations for the employees
she supervised.  Instead, she told employees who inquired as to
the whereabouts of their evaluations that they were in the
Director's office.  Banks 1999 Appraisal Suppl. at 34.  The USDA
alleges that Banks's performance was rated as "unsatisfactory,"
due to Banks's poor performance and that Gray recommended that
Banks be terminated.  See Def.'s Mot., Ex. 2 (Rosalind Gray Dep.
at 23:11-13); see also Banks 1999 Appraisal at 31.

Banks counters that the USDA's proffered legitimate non-
discriminatory reason is false and provides evidence that the
reason is pretexual.  Banks points to documents in the record
that discuss the falsity of almost every statement in her 1999
performance appraisal and provide greater context to show that
she successfully performed her SES position.  For example, Banks

-12-

contends that she made substantial progress on the affirmative employment plans but that she never received the additional information from others necessary to complete them.  See Pl.'s Mot., Ex. 12 (Stmt. of Rebuttal of Rosalind Gray's Suppl. Rep. for Denise Banks' SES Performance Appraisal (Jan. 2000) ("Banks Rebuttal 2000") at 5-6).  Banks also alleges that the deadline set for the training modules was arbitrary and unrealistic and that the quality of the modules was due to Gray's refusal to hire needed experts to aid in developing the modules and not Banks's poor performance.  See Pl.'s Mot., Ex. 24 (Denise Banks' Stmt. of Rebuttal (Dec. 1999) at 3, 6-7).  Banks also asserts that "performance evaluations of the majority of staff in the Employment directorate were executed and forwarded to the Director's Office."  Banks Rebuttal 2000 at 5.  She also contends that she never told any of her employees that their evaluations were in the Director's office.  Id.

Although the USDA has offered a legitimate non-discriminatory reason for removing Banks from the SES, Banks has put forward sufficient evidence for a reasonable jury to find that the USDA's proffered reason is false and is not the actual reason she was removed.  Because there is a genuine dispute of material fact as to Banks's performance in the SES position, summary judgment will be denied for both the USDA and Banks regarding Banks's claim that she was demoted from the SES because of discrimination.

-13-

II.  RETALIATION

Courts analyze retaliation claims under the McDonnell
Douglas framework.  See Jones v. Bernanke, 557 F.3d 670, 677
(D.C. Cir. 2009).  To establish a prima face case of retaliation,
a plaintiff must show "(1) that [she] engaged in statutorily
protected activity; (2) that [she] suffered a materially adverse
action by [her] employer; and (3) that a causal link connects the
two."  Id. at 677.

The USDA argues that Banks cannot establish a prima facie
case of retaliation because she "cannot establish a causal
connection between her prior protected activity and the actions
taken against her."  Def.'s Mem. at 21.  Specifically, the USDA
contends that Banks cannot make out a prima facie case that she
was removed from the SES, she received the letter of direction
and had to work additional hours as a result, and her performance
rating in 2005 was lowered in retaliation for her protected EEO
conduct.  Id. at 21-24.  In response, Banks repeats some of her
allegations that the USDA retaliated against her, see Pl.'s Mot.,
Pl.'s Mem. in Supp. of Her Mot. for Partial Summ. J. & in Opp'n
to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") at 19-22, and asserts
that she did not waive her retaliation claims because she "filed
an EEO complaint after her termination was proposed," Pl.'s Reply
to Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. at 5, but she
does not address any of the USDA's arguments challenging her
retaliation claims.  "A party opposing a summary judgment motion

-14-

who does not address an argument advanced in the motion is deemed to have conceded the argument." Hairston v. Boardman, Civil Action No. 08-1531 (RWR), 2013 WL 165017, at *3 (D.D.C. Jan. 16, 2013). Thus, the USDA's arguments regarding Banks's retaliation claims will be treated as conceded, and the USDA's motion for summary judgment will be granted as to Banks's challenged retaliation claims.[6]

III. HOSTILE WORK ENVIRONMENT CLAIM

Under Title VII, harassing an employee on the basis of her membership in a protected class is unlawful when it amounts to discrimination that expressly or constructively alters the employee's "terms, conditions, or privileges of employment[.]" 42 U.S.C. § 2000e-2(a)(1); see also Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); Curry v. District of Columbia, 195 F.3d 654, 659 (D.C. Cir. 1999). "Courts describe . . . a constructive alteration as 'hostile work environment' harassment." Curry, 195 F.3d at 659 (quoting Burlington Indus., 524 U.S. at 752). To state a hostile work environment claim, a

---

[6] The USDA challenged only three of Banks's bases for her retaliation claim. Count One of Banks's amended complaint also claims that the USDA retaliated against Banks by reassigning her from her supervisory position as a Division Chief, Am. Compl. ¶ 12, failing to restore her annual leave, id. ¶ 50, denying her leave, id. ¶ 18, issuing discriminatory performance standards, id. ¶ 47, denying Banks the opportunity to receive certain training, id. ¶ 51, and lowering her performance ratings in 2006, id. ¶¶ 44-45, and in 2007, id. ¶ 47, which resulted in no or decreased performance awards. See id. ¶ 53. Judgment will not be entered for the USDA on these unchallenged bases.

plaintiff has to show that she suffered harassment because of her protected activity or on the basis of a protected classification such as race or sex, "that her employer knew or should have known of the alleged harassment and failed to take remedial action, and that the hostile environment interfered with her work." Dozier-Nix, 851 F. Supp. 2d at 166; see also Na'im v. Clinton, 626 F. Supp. 2d 63, 79 (D.D.C. 2009). "Not all things that make an employee unhappy create a hostile work environment." Graham v. Holder, 657 F. Supp. 2d 210, 216 (D.D.C. 2009). The conduct complained of "must be extreme to amount to a change in the terms and conditions of employment[.]" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Graham, 657 F. Supp. 2d at 216 (citing Faragher, 524 U.S. at 787-88).

The USDA argues that Banks cannot establish a prima facie case of hostile work environment because the allegedly discriminatory conduct was not frequent because it occurred over the course of eight years, the conduct was not severe, and Banks does not allege that the conduct interfered with her work. Def.'s Mem. at 29-30. Banks's spare response counters that "True's attitude toward her subordinates evinced a fundamental contempt for African American women." Pl.'s Mem. at 44.

-16-

However, Banks does not point to any evidence to support this assertion and has argued nothing in her opposition and cross-motion for summary judgment that would demonstrate that the discriminatory conduct was so frequent and severe as to interfere with her work.  Because Banks has not made out a prima facie case of hostile work environment, judgment will be entered for the USDA on this claim.

<u>CONCLUSION AND ORDER</u>

The parties have demonstrated that there are disputed issues of material fact regarding whether Banks was discriminatorily removed from the SES.  Further, Banks conceded the challenged retaliation claims, and did not make out a prima facie case of hostile work environment.  Accordingly, it is hereby

ORDERED that the USDA's motion [38] for summary judgment be, and hereby is, GRANTED IN PART and DENIED IN PART.  Summary judgment is entered for the USDA on Banks's claims in Count One that the USDA retaliatorily removed her from the SES, issued her a letter of direction, and lowered her performance rating in 2005, and on Count Five.  Summary judgment is denied as to Banks's other claims of discrimination and retaliation.  It is further

ORDERED that Banks's motion [46] for partial summary judgment be, and hereby is, DENIED.  It is further

ORDERED that the parties appear for a scheduling conference on April 16, 2013 at 10:15 a.m.

-17-

SIGNED this 26th day of March, 2013.

_____/s/_____

RICHARD W. ROBERTS
United States District Judge
