# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                            )

**DENISE A. BANKS,**              )
                            )
     **Plaintiff,**                )
                            )
       **v.**                    )     **Case No. 07-cv-01807 (APM)**
                            )
**SONNY PERDUE,[1] U.S. Secretary of Agriculture,**        )
                            )
     **Defendant.**              )
_____ )

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Denise Banks brought this action under Title VII of the Civil Rights Act of 1964 against Defendant Secretary of the U.S. Department of Agriculture ("USDA" or "Defendant"), alleging, among other things, that she was discriminatorily removed from her Senior Executive Service position while employed at USDA based on her sex and race. Plaintiff's discrimination claims survived summary judgment and proceeded to trial. At trial, the jury agreed that Plaintiff's sex was a motivating factor in her demotion and returned a damages award of $100,000. The jury, however, found in favor of USDA on Plaintiff's race discrimination claim.

The jury's verdict lies at the heart of the parties' motions that are now before the court. In a motion filed under Rule 50 of the Federal Rules of Civil Procedure, USDA argues that the verdict cannot be sustained and asks the court to enter judgment as a matter of law in its favor on Plaintiff's sex discrimination claim. Alternatively, Defendant seeks a new trial pursuant to Rule 59. Plaintiff,

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes the current Secretary of Agriculture as the defendant in this case.

on the other hand, maintains that the verdict should be upheld and, by her own motion, seeks an equitable award consisting of reinstatement to the Senior Executive Service, back pay, and a clean employment record.

For the reasons stated below, the court concludes that: (i) the jury had a reasonable basis to find that USDA discriminated against Plaintiff on the basis of sex when it removed her from her Senior Executive Service position; (ii) USDA is not entitled to a new trial; and (iii) Plaintiff is entitled to reinstatement to the Senior Executive Service, a clean record, and back pay, albeit in an amount less than she seeks. Accordingly, the court denies Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial, and grants in part Plaintiff's Amended Motion for Reinstatement, Back Pay, and Clean Record.[2]

## II. DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL

### A. Background

#### 1. *Factual Background*

In January 2000, Plaintiff Denise Banks was demoted from her Senior Executive Service ("SES") position at USDA. Def.'s Mem. in Support of Its Pending Mot. for J. as a Matter of Law or, in the Alternative, for a New Trial, ECF No. 151 [hereinafter Def.'s Mot.], Ex. 1, ECF No. 151-1 [hereinafter Trial Tr.], at 32–33.[3] Specifically, Plaintiff was removed from her position as Deputy Director of Employment in USDA's Office of Civil Rights and demoted to a GS-15 position. *Id.* at 32–33, 37–38; Def.'s Mot., Ex. 2, ECF No. 151-2 [hereinafter Def.'s Ex. 2]; Def.'s

---

[2] The court apologizes to the parties, particularly to Plaintiff, for the inordinate amount of time that the Rule 50 motion has been pending. No motion, let alone a post-trial motion, should take so long to resolve.

[3] For convenience, the court cites to Exhibit 1 of Defendant's Motion, which compiles all of the daily jury trial transcripts and includes sequential page numbering. The individual trial transcripts may be found in ECF Nos. 142–147.

Mot., Ex. 3, ECF No. 151-3 [hereinafter Def.'s Ex. 3]; *see* Mem. of Points & Authorities in Opp'n to Pl.'s Am. Mot. for Reinstatement, Backpay, and Clean Record, ECF No. 174 [hereinafter Def.'s Opp'n], at 2–3. Plaintiff has remained at USDA working in less senior GS-15 positions ever since her demotion, but she has never again occupied an SES position. *See* Pl.'s Am. Mot. for Reinstatement, Back Pay, and Clean Record, ECF No. 170 [hereinafter Pl.'s Am. Mot.], at 4[4]; Def.'s Opp'n at 7–8; Def.'s Notice of Filing Exs., ECF No. 175 [hereinafter Def.'s Exs.], Ex. MM, ECF No. 175-38 [hereinafter Def.'s Ex. MM].

At the time relevant to this lawsuit, USDA's Office of Civil Rights was directed by Rosalind Gray. Trial Tr. at 430. Gray, in turn, supervised three deputy directors, *id.* at 431, two of whom are central to this case: Plaintiff and Jeremy Wu. In February 1999, Plaintiff began working as Deputy Director for Employment and oversaw a staff of approximately 50 people. *Id.* at 209, 338, 431. Wu, an Asian-American male, was Deputy Director for Systems and Administration and oversaw a staff of approximately six people. *Id.* at 34, 212–13, 462–63; Def.'s Answer to First Am. Compl., ECF No. 16 [hereinafter Answer], ¶ 16; *see* Trial Tr. at 16.

Plaintiff and Wu were members of the SES, the highest career-level position in the federal government. Trial Tr. at 43. Members of the SES are executives at various agencies, and the only more senior positions in the federal government are presidential appointees. *See id.* at 200; *cf. id.* at 530. In 1999, Banks was in her first year as a member of the SES, which is a probationary period. *Id.* at 208, 294, 527. At the same time, Wu was in his second year as a member of the SES and had completed his probationary term. *See id.* at 44–45.

All SES members at USDA are subject to performance evaluations by their supervisor. *See id.* at 460–62, 539. The supervisor's evaluation is in turn reviewed by the Performance Review

---

[4] Citations to Plaintiff's Amended Motion are to the page numbers electronically generated by CM/ECF.

Board ("PRB" or "Board"), a collection of SES officials from other parts of USDA. *See id.* at 295, 461–62; *see also id.* at 461 (testimony from Gray explaining that "PRB rating boards are evaluation peer-review boards that are set up throughout all of the departments of government to evaluate [SES] members").

In November 1999, Gray gave both Plaintiff and Wu "unsatisfactory" performance appraisals and recommended that they be terminated from the SES. Def.'s Ex. 2; Def.'s Mot., Ex. 4, ECF No. 151-4 [hereinafter Def.'s Ex. 4]. The appraisals for both executives contained four performance "elements," or review criteria: (1) development and support of programs and policy; (2) delivery of programs and/or functions; (3) management of resources; and (4) civil rights. *Id.* For each executive, three of the four elements were considered "critical," *see id.*; Trial Tr. at 41, 459–60, although different elements were designated as critical for each executive, according to his or her respective job duties, *see* Trial Tr. at 458–60, 465–66. "Management of resources" was critical for Wu because he managed the budget, contracting, and other resource issues in the Office of Civil Rights. *See* Trial Tr. at 464–65. "Development and support of programs and policy" was critical for Plaintiff, but not Wu, because Plaintiff developed programs and policies. *Id.* at 458–59, 465–66. Gray gave Plaintiff a "does not meet fully successful" in two elements: (1) development and support of programs and policy and (2) delivery of programs and/or functions. Def.'s Ex. 2. Gray gave Wu a "does not meet fully successful" for one element: delivery of programs and/or functions. Def.'s Ex. 4. Under the rating scale, these assessments gave each executive a summary rating of "unsatisfactory." Def.'s Ex. 2; Def.'s Ex. 4; *see* Trial Tr. at 466. Gray recommended that both be removed from the SES. Def.'s Ex. 2; Def.'s Ex. 4; *see* Trial Tr. at 532–33. In late 1999, Sally Thompson, Acting Assistant Secretary for Administration, reviewed

and signed off on Plaintiff's and Wu's performance appraisals. Trial Tr. at 33, 180, 515; Def.'s Mot. at 4–5; Def.'s Ex. 2; Def.'s Ex. 4; *see* Trial Tr. at 536–37.

The appraisals then went to the PRB for review. Def.'s Mot. at 4; *see* Trial Tr. at 45, 527–28. In December 1999, Plaintiff submitted an approximately 40-page rebuttal of Gray's appraisal to the PRB. Trial Tr. at 181. The PRB reviewed Plaintiff's rebuttal and had some additional questions for Gray, who, in turn, submitted a supplemental statement. *See id.* at 182.

Upon review of a supervisor's evaluation and recommendation, the PRB issues its own summary rating, either concurring with or changing the supervisor's rating. *Cf. id.* at 42, 532–34. For Wu, the PRB changed the summary rating to "minimally satisfactory" and recommended that Wu be reassigned. *See id.*; Def.'s Ex. 4. Wu's appraisal includes written comments from the PRB that "[t]he designation of element #2 as critical not clear to the executive. The [PRB] gave the executive the benefit of the doubt and changed the designation to noncritical, thus changing the summary rating for Mr. Wu to Minimally Satisfactory." Def.'s Ex. 4. But for Plaintiff, the PRB concurred with Gray's summary rating and recommended Plaintiff's removal from the SES. *See* Trial Tr. at 295–96; Def.'s Ex. 2. Plaintiff's appraisal does not contain any written comments. *See* Def.'s Ex. 2. On January 10, 2000, Charles Rawls, Chairman of the PRB, signed both Plaintiff's and Wu's appraisals on behalf of the PRB. *See* Def.'s Ex. 2; Def.'s Ex. 4.

Before final action could be taken on Wu, Wu departed for an SES position within the Department of Energy. *See* Trial Tr. at 528, 530. The chair of the PRB told Gray that when Wu appeared before the PRB, Wu requested that his SES status be retained because he had accepted a position at the Department of Energy and planned to transfer. *Id.* at 530. He further told Gray that the PRB would not proceed with Wu's evaluation if Gray declined to submit supplemental

materials to the PRB. *Id.* Gray did not submit any additional materials to the PRB. *Id.* Wu transferred to the Department of Energy around January 2000. *See id.* at 528.

Plaintiff's appraisal, however, was forwarded to then-Secretary of Agriculture, Dan Glickman, for a final rating and approval. *Id.* at 295–96. On January 19, 2000, Glickman issued a final rating of "unsatisfactory" for Plaintiff and signed the performance appraisal. *Id.* Wu's appraisal does not contain Glickman's signature. *See* Def.'s Ex. 4.

After Glickman signed Plaintiff's performance appraisal, it was forwarded to Paul Fiddick, who had joined USDA in or around November 1999 and had replaced Thompson as the Assistant Secretary for Administration. Trial Tr. at 301–03. Fiddick sat on the PRB that fall, including the PRB panel that reviewed Plaintiff's performance. *See id.* at 545–46. Fiddick sent Plaintiff a letter on January 24, 2000, informing her of her demotion. Def.'s Ex. 3. The letter states as the reason for her demotion "unsatisfactory" performance during her probationary period. *Id.* At trial, Fiddick testified that he did not remember the PRB proceedings evaluating Plaintiff. *See* Trial Tr. at 546. He also said that, when he sent the demotion letter to Plaintiff, he was just affirming the action of an independent body, the PRB. *Id.* at 541–42. Effective January 29, 2000, Plaintiff was assigned to a GS-15 position as Special Assistant to the Deputy Director for Programs in the Office of Civil Rights. Def.'s Ex. 3.

After her demotion, Plaintiff prepared a rebuttal to Gray's supplemental statement and gave it to Fiddick. Trial Tr. at 185–86, 547; *see* Pl.'s Mem. in Opp'n to Def.'s Mots. for J. as a Matter of Law, ECF No. 152 [hereinafter Pl.'s Opp'n], Ex. 4, ECF No. 152-4. Fiddick testified that his calendar shows that he held three meetings in March, April, and June 2000, when he assumes he discussed her request for reconsideration. *See* Trial Tr. at 547–48; *see also id.* at 517 (Gray testimony that Fiddick said that he had met with Plaintiff and her attorney following the PRB's

decision); *id.* at 559–60 (Plaintiff testimony that she met with Fiddick in late 1999 and early 2000). Fiddick ultimately denied Plaintiff's request. *Cf. id.* at 546–47.

                2.     *Procedural History*

Plaintiff filed an EEO complaint regarding her demotion in February 2000. *See* Answer ¶ 8. In February 2007, USDA issued a final agency decision upholding Plaintiff's demotion. *Cf. id.* Plaintiff appealed, and the EEOC's Office of Federal Operations affirmed USDA's decision. Am. Compl., ECF No. 15, ¶ 8; *see* Answer ¶ 8.

Plaintiff filed a Complaint in this court in October 2007, which she amended in August 2008. *See generally* Am. Compl. In her five-count Amended Complaint, Plaintiff alleged that USDA discriminated against her on the basis of race, sex, and age. *See id.* ¶¶ 53–57. The parties cross-moved for summary judgment, and in March 2013, then-Chief Judge Roberts granted and denied those motions in part. Judge Roberts granted USDA's motion as to Plaintiff's hostile work environment claims as well as several of her retaliation claims, but allowed Plaintiff's race, age, and sex discrimination claims and other retaliation claims to proceed. *See Banks v. Vilsack*, 932 F. Supp. 2d 185 (D.D.C. 2013). On the eve of trial, the court granted Plaintiff's motion to amend her complaint to include only claims that she was discriminated against on the basis of race and sex when she was removed from the SES in 2000. *See Banks v. Vilsack*, 958 F. Supp. 2d 78, 81 n.1 (D.D.C. 2013); *see also* Minute Order, June 17, 2013.

Plaintiff's sex and race discrimination claims were tried before a jury in August 2013. At three points during trial—at the close of Plaintiff's case-in-chief, after the close of its own case, and at the close of Plaintiff's rebuttal case—USDA moved for judgment as a matter of law under Rule 50(a). *See* Trial Tr. at 372–82, 551–54, 561–63. At each point, Judge Roberts reserved ruling on the motion. *Id.* at 382, 553, 563.

At the close of evidence, Judge Roberts instructed the jury on two theories of intentional discrimination. *See generally id.* at 575–77, 601–15. He instructed that Plaintiff could show either that her sex was a *determinative* factor in her removal from the SES, or that her sex was a mere *motivating* factor in USDA's decision. *See* Final Instructions, ECF No. 124 [hereinafter Instructions], at 11–13. The court further explained that under the latter, "mixed-motive" theory, the jury could only award Plaintiff damages if USDA failed to prove by a preponderance of the evidence that it would have made the same decision to demote Plaintiff even if her sex had played no role in the decision. *See id.* at 15.

The jury returned a verdict that was favorable for Plaintiff in part, finding that USDA removed Plaintiff from her SES position because of intentional discrimination based on her sex, but not on the basis of her race. Trial Tr. at 681; *see also* Verdict Form, ECF No. 123. Importantly, in finding in favor of Plaintiff on her claim of sex discrimination, the jury did not conclude that Plaintiff would have been demoted *but for* her sex, but instead found that sex was a *motivating factor* in Plaintiff's demotion and that USDA had not shown it would have otherwise demoted Plaintiff. *See* Verdict Form. The jury awarded Plaintiff $100,000 in damages. *Id.*

USDA then moved for judgment as a matter of law under Rule 50(b) or, in the alternative, for a new trial under Rule 59. Trial Tr. at 684–85; Def.'s Mot.; *see also* Def.'s Oral Mot. for Rule 50(a) and 50(b), ECF No. 155. That motion is now before the court.

**B.    Discussion**

Defendant's Motion advances two bases for undoing the jury's verdict. First, under Rule 50, Defendant contends that no reasonable jury could have concluded from the evidence presented that Plaintiff's sex was a motivating factor in her demotion. To support that assertion, Defendant methodically identifies each potential individual discriminator—Rosalind Gray, Sally

Thompson, Dan Glickman, and Paul Fiddick—and explains why the evidence does not evince any discriminatory intent on that individual's part. *See* Def.'s Mot. at 15–22. Moreover, Defendant also disputes that the jury could have reasonably concluded that the PRB discriminated against Plaintiff. *See id.* at 22–28. Defendant therefore asks the court to vacate the judgment in favor of Plaintiff on her sex discrimination claim and enter judgment in its favor as a matter of law. *See id.* at 1.

In the alternative, Defendant contends that a new trial is warranted under Rule 59 for two reasons: (1) Plaintiff gave Defendant no pre-trial notice of her theory that the PRB discriminated against her and raised it for the first time mid-trial, thus constituting prejudicial "unfair surprise," and (2) the jury's verdict is internally inconsistent. *See id.* at 3, 29–31. With respect to the latter ground, Defendant also argues that if the court were to enter judgment on the jury's verdict and decline to order a new trial, the court should at least do so "based on the jury's finding that gender was a mere motivating but not a determinative cause and, thus, award Plaintiff no compensatory damages or equitable relief." *Id.* at 29.

The court starts with Defendant's Rule 50 argument and then considers the grounds asserted for a new trial under Rule 59.

1.  *Rule 50*

    a.  Legal standard

The standard for considering a motion under Rule 50 "mirrors" the standard for summary judgment under Rule 56. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]he inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Judgment as a matter of law "is highly disfavored because it intrudes upon the

rightful province of the jury." *Breeden v. Novartis Pharm. Corp.*, 646 F.3d 43, 53 (D.C. Cir. 2011) (internal quotation marks omitted). It is proper only if "'the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for' the nonmoving party." *Id.* (quoting Fed. R. Civ. P. 50(a)(1)). A court evaluating a motion for judgment as a matter of law, upon review of the entire record, "must draw all reasonable inferences in favor of the nonmoving party, and . . . may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (D.C. Cir. 2004) (citing *Reeves* standard).

b.      The merits

The question posed by Defendant's Motion for Judgment as a Matter of Law is whether Plaintiff presented sufficient evidence at trial to allow a reasonable jury to conclude that her sex motivated USDA's decision to demote her. Title VII "provides that 'an unlawful employment practice is established when . . . sex . . . was a *motivating factor* for any employment practice.'" *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (quoting 42 U.S.C. § 2000e-2(m)). Under this theory of discrimination, also known as the "mixed-motive" standard, a plaintiff need not prove that unlawful discrimination was the determinative factor, or but-for cause, of the adverse employment action; rather, she can prevail on a lesser showing that discriminatory animus was merely a motivating factor for the adverse action. *Id.* Importantly, however, in a mixed-motive case, if the defendant demonstrates that it "would have taken the same action in the absence of the impermissible motivating factor," then the relief available to the plaintiff is limited to declaratory relief, certain injunctive relief, and certain fees and costs. *Id.* (quoting 42 U.S.C. § 2000e-5(g)(2)(B)). Thus, in the mixed-motive context, a defendant can avoid an award of money

damages by showing it would have taken the adverse action against the employee for a non-discriminatory reason.

Although the "but for" and "mixed-motive" theories differ, the means of proving discriminatory intent are the same. "As with but-for causation, a plaintiff can use evidence of pretext and the *McDonnell Douglas* framework to prove a mixed-motive case." *Id.* To demonstrate pretext, a plaintiff may present evidence that similarly situated employees of a different class received more favorable treatment. *See Royall v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 548 F.3d 137, 145 (D.C. Cir. 2008) (citing *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 495 (D.C. Cir. 2008)). A similarly situated employee is one who is charged with an offense of comparable seriousness and whose relevant employment circumstances are the same as the plaintiff's in all relevant respects. *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115–16 (D.C. Cir. 2016). Alternatively, a plaintiff "may attempt to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision." *Brady*, 520 F.3d at 495. An employee cannot, however, prove discrimination by showing that the employer was merely mistaken about the predicate for the adverse action. Rather, where an employer's stated belief "is reasonable in light of the evidence, . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Id.; see also George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false."). So, as relevant here, an employee demoted for inferior work performance cannot prove discrimination by showing that her performance in fact met standards; instead, she must prove that it was unreasonable for her employer to reach such a subjective assessment.

In this case, Plaintiff attempted to show pretext in two ways. First, she urged the jury to find pretext based on how Defendant treated her case relative to Wu's. Second, Plaintiff vigorously argued that Gray could not have reasonably believed that her work performance warranted the "unsatisfactory" rating that led to her demotion. For the reasons stated below, a reasonable jury could have found the evidence presented supports either approach.

i. *Comparator evidence*

For a female employee to be similarly situated to a male counterpart, "all of the relevant aspects of her employment situation" must be "nearly identical to those of the male employee." *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (internal quotation marks omitted). "Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *See Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015). Whether another employee is similarly situated is usually a question of fact for the jury. *See Wheeler*, 812 F.3d at 1116.

Here, the jury could have found that Wu and Plaintiff were similarly situated based on the fact that: (i) both Plaintiff and Wu were members of the SES—the highest career position in the federal government; (ii) both were deputy directors in USDA's Office of Civil Rights; (iii) both shared the same supervisor, Gray, who was the director of the Office of Civil Rights; and (iv) both received an unsatisfactory rating for poor work performance from Gray and were recommended for removal from the SES at the same time. *Cf. id.* at 1116–19 (finding evidence sufficient to treat plaintiff and coworkers as comparators where they worked in the same or comparable units and there was a genuine issue as to whether they were subject to the same decision makers and whether they engaged in misconduct of comparable seriousness). To be sure, there are some differences

between Plaintiff and Wu, but those differences are not significant enough to render them insufficient comparators *as a matter of law*. For instance, Plaintiff was in her probationary year in the SES at the time of her unsatisfactory rating, and Wu was not. But that difference is mitigated by the fact that Wu was only in his second year of serving in the SES, as well as evidence that Plaintiff and Wu were evaluated in the same manner regardless of their seniority in the SES. *See* Trial Tr. at 44–45, 527–28. Plaintiff and Wu also had different job duties because they led different sections. The jury, however, reasonably could have discounted that difference and placed greater weight on the fact that Plaintiff and Wu shared the same rank and both were in the same situation: they were before the PRB, having been recommended by their common superior, Gray, for removal from the SES for poor work performance. Ultimately, these modest differences between Plaintiff and Wu do not warrant disturbing the jury's verdict.

USDA's post-trial contention that Wu and Plaintiff cannot be considered comparators as a matter of law rests largely not on some legal or position-based distinction, but rather on the employees' treatment by the PRB. *See* Def.'s Mot. at 25–27. USDA asserts that the Board articulated a legitimate reason for treating Plaintiff and Wu differently—namely, that Plaintiff was aware of all of her critical performance elements and Wu was not. *Id.* at 25. For that reason, USDA argues, the two are not similarly situated. *Id.* But USDA cannot bootstrap its claimed nondiscriminatory reason for treating Plaintiff and Wu differently into an argument that Plaintiff and Wu are not comparators. The question whether two employees are similarly situated is distinct from whether their different treatment gives rise to an inference of discrimination. *Cf. Wheeler*, 812 F.3d at 1115–16 (failing to list the actions taken or not taken against the proposed comparator as a factor bearing on whether another employee is an appropriate comparator).

Moreover, even if Wu's professed ignorance of one of his critical performance elements could be considered a potential distinguishing factor, *see* Def.'s Mot. at 27, the jury reasonably could have rejected it. There was sufficient evidence presented at trial for the jury to disbelieve Wu's claimed obliviousness. Gray testified that Wu received a "package" when he took the job as deputy director and that, upon receipt of the package, "not only did he sign off and accept his position, his job description, but he also accepted his performance standards at that time." Trial Tr. at 523. Thus, from Gray's testimony, the jury could find that Wu in fact did have knowledge of his critical performance elements and that his later claim of ignorance before the PRB was not credible. Additionally, Wu was in the SES for a year longer than Plaintiff when they received negative performance appraisals from Gray. *See id.* at 44–45. From that fact the jury reasonably could have found it implausible that Wu, a long-time employee of the federal government, *see id.* at 462, would not have known the full scope of his job duties and responsibilities, *see id.* at 619 (arguing in closing that Wu's asserted lack of knowledge was not credible in light of his experience). And, although USDA alludes to the difference in Plaintiff's and Wu's "critical elements" as a distinguishing factor between them, Def.'s Mot. at 26, the jury readily could have found that difference to be immaterial when the key question presented was why Wu was treated differently from Plaintiff when both were adjudged by Gray to have performed unsatisfactorily with regard to their *respective* job responsibilities and recommended for removal from the SES. In the end, it is the jury's province to weigh the evidence. Viewing that evidence in the light most favorable to Plaintiff here, the jury reasonably could have found that Wu and Plaintiff were similarly situated.

Finally, USDA argues that, even if Plaintiff and Wu can be considered comparators, "Plaintiff offered no basis for a reasonable juror to question the bona fides of the Board's stated

reason" for treating Wu differently than Plaintiff. *Id.* at 28. In other words, USDA insists that the Board's nondiscriminatory reason for treating Plaintiff differently is not evidence of pretext. As discussed, the reason the Board offered for not recommending Wu's removal was that Wu did not know that one of his performance elements was deemed critical. The sole evidence presented by USDA of that rationale are typed comments at the conclusion of Wu's performance appraisal, which read: "The designation of element #2 as critical not clear to the executive. The [Board] gave the executive the benefit of the doubt and changed the designation to noncritical, thus changing the summary rating for Mr. Wu to minimally satisfactory." Def.'s Ex. 4 at 4; *see also* Trial Tr. at 36–37, 41–42.[5] The jury was not, however, required to take the comments on Wu's performance appraisal as gospel. As already discussed, a reasonable juror could have rejected Wu's professed ignorance of his critical elements; correlatively, a reasonable juror could have found that the PRB's claimed reliance on Wu's dubious explanation itself to be incredible. *See Conboy v. Bureau of Nat'l Affairs, Inc.*, 15 F.3d 1159 (tbl.), 1993 WL 524001, at \*3 (D.C. Cir. 1993) ("Conboy is correct when he argues that the factfinder may find the employer's explanation sufficiently incredible to permit an inference of discrimination."); *cf. Reeves*, 530 U.S. at 147 ("Proof that the defendant's explanation is unworthy of credence . . . is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the [jury] can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." (citation omitted)). Indeed, Plaintiff made that precise argument to the jury. Trial Tr. at 627 (arguing that the Board's rationale for treating Wu and Plaintiff differently "[o]n its face . . . can't be believed").

---

[5] Judge Roberts excluded USDA's proposed witness from the PRB, Charles Rawls, because USDA disclosed his name too late. *See Banks v. Vilsack*, 292 F.R.D. 158 (D.D.C. 2013). As a consequence, USDA offered no testimony from a member of the PRB about the Board's decision-making.

Moreover, the PRB's formulation of the reason for the disparate treatment itself could have planted seeds of doubt in the jurors' minds. Giving Wu "the benefit of the doubt" is the kind of subjective explanation that could have caused a reasonable juror to question the veracity of the Board's explanation. *See Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (noting that "courts traditionally treat explanations that rely heavily on subjective considerations with caution"). Plaintiff urged the jury to draw that very conclusion. Trial Tr. at 662 ("[Wu] got, as they said, the benefit of the doubt; Ms. Banks got no benefit whatsoever."). At bottom, the question whether USDA acted with discriminatory intent lies within the province of the jury, *see Lapera v. Fed. Nat'l Mortg. Ass'n*, 210 F. Supp. 3d 164, 184 (D.D.C. 2016), and a reasonable jury here could have concluded that the PRB's proffered explanation for treating Wu more favorably was pretext. The court sees no reason to second-guess the jury's decision-making in this case.

ii.    *Gray's performance review and Fiddick's refusal to reconsider*

Plaintiff's theory of discrimination was not confined to the PRB. Based on the evidence presented at trial, the jury also could have credited several other theories of pretext in reaching its conclusion that Plaintiff's sex motivated USDA's decision. The court starts with Gray. There was sufficient evidence presented at trial for a reasonable jury to find that Gray's stated reason for recommending Plaintiff's demotion was false or was patently unreasonable, and that the appraisal—upon which the PRB's recommendation and Fiddick's decision was based—was the product of discrimination. Gray recommended Plaintiff's removal due to her alleged poor performance. *See generally* Def.'s Ex. 2. The jury, however, heard evidence that, if believed, would cast doubt on Gray's credibility and the bona fides of her assessment of Plaintiff. For instance, Plaintiff presented testimony from one of her second-level subordinates in the USDA Office of Civil Rights, who stated that he had worked with about 50 people in the agency "who

16

had come or gone or who were still there who were absolutely incompetent," unlike Plaintiff, and that he was therefore "stunned" by her demotion. Trial Tr. at 362, 368; *see also id.* at 368 (noting that in his 13 to 14 years in the Office, he had never seen anyone demoted other than Plaintiff). He further testified that Plaintiff was "the first Second-Line Supervisor [he] had . . . in [his] time there, ever, who knew Civil Rights," *id.* at 368, and described her as "analytical," "very professional," "hands-on," "readily accessible," and "supportive," *id.* at 363. Moreover, for every contention by USDA at trial that Plaintiff underperformed in her job, Plaintiff provided rebuttal evidence. For example, as to Gray's assertion that there were approximately 120 cases in which decisions were drafted but not forwarded to her office for signature, *see* Def.'s Ex. 2 at 3, Plaintiff testified that many of those cases were at earlier stages and therefore were not ready for Gray's review, Trial Tr. at 135, 172. Similarly, to rebut Gray's assistant's claims that Plaintiff was difficult to locate during office hours, *see* Trial Tr. at 396–98, Plaintiff presented evidence from her special assistant that she worked long hours and was available, *id.* at 329–30, 335–36. It was up to the jury to resolve these factual disputes, and they reasonably could have found in Plaintiff's favor.

USDA emphasizes that the question is not whether Plaintiff actually performed poorly, but whether the employer honestly and reasonably believed she performed poorly. Def.'s Mot. at 16–17; Def.'s Reply Mem. in Supp. of Mots. for J. as a Matter of Law or, in the Alternative, for a New Trial, ECF No. 154 [hereinafter Def.'s Reply], at 21–22. Thus, even if Plaintiff created a jury question as to whether the performance review was accurate, USDA argues, she failed to present sufficient evidence casting doubt on the sincerity of Gray's belief in Plaintiff's poor performance. Def.'s Mot. at 17. Contrary to USDA's assertion, however, and as discussed immediately above, Plaintiff did present sufficient evidence to cast doubt upon Gray's belief that Plaintiff was

performing poorly, and it went beyond Plaintiff's own testimony. Thus, this case stands in contrast to cases in which the parties do not contest the facts about how an individual performed and only take issue with a subjective appraisal based on largely uncontested facts. *Cf. Royall*, 548 F.3d at 146 ("Given the consistent testimony by several Union officers that they received complaints about [plaintiff's] work and the undisputed evidence that at least two tax payments for which he was responsible were late"—which "alone could have been sufficient nondiscriminatory grounds for terminati[on]"—"a reasonable jury could not find that the Union's officers were lying, much less that the Union's 'stated belief about the underlying facts [wa]s [un]reasonable in light of the evidence.'" (fourth alteration in original) (quoting *Brady*, 520 F.3d at 495)); *Waterhouse v. District of Columbia*, 298 F.3d 989, 995 (D.C. Cir. 2002) ("Because [plaintiff] did not contravene—and in fact admitted—many of the deficiencies the defendants cited concerning her performance, she failed to establish that her 'employer's proffered explanation [was] unworthy of credence.'" (second alteration in original) (quoting *Reeves*, 530 U.S. at 143)). Accordingly, if the jury credited Plaintiff's evidence over Gray's testimony, then the jury would have had a basis to find that Gray's negative performance evaluation of Plaintiff was a pretext for sex discrimination. *Cf. George*, 407 F.3d at 415–16.

And then there is Fiddick. Fiddick sat on the PRB that considered both Plaintiff's and Wu's performance appraisals. Trial Tr. at 546–47. Although the Board did not ultimately demote Wu, it did recommend that Plaintiff be demoted, and Fiddick then executed that decision. *See id.* at 44–46; *cf. id.* at 538–42. Plaintiff asked Fiddick to reconsider. Specifically, after Plaintiff received notice of her demotion, she prepared a rebuttal statement and delivered it to Fiddick, in which she addressed the allegations of her poor performance. Pl.'s Opp'n, Ex. 4, ECF No. 152-4. Fiddick reviewed this material, yet denied her request for reconsideration. *See* Trial Tr. at 546–

48. For the same reasons that the jury could have doubted the PRB's proffered explanation for Plaintiff's demotion, the jury could have questioned Fiddick's story. The jury could have held Fiddick accountable for curiously giving Wu the "benefit of the doubt," but not extending similar benefit to Plaintiff, either before the PRB or during the reconsideration process. Plaintiff pressed the jury to reach that very conclusion. *Id.* at 622, 660–62. Moreover, Plaintiff questioned Fiddick's credibility because he could not recall many of the facts surrounding Plaintiff's demotion. *Id.* at 622; *see also id.* at 627 (arguing that Fiddick "took refuge in a long period of time and in a large lack of memory to deny that he had involvement in this case"). It was for the jury to decide whether Fiddick's lapses in memory were innocent, or evidence of discriminatory animus. In short, there was evidence regarding Fiddick's actions from which the jury could infer that Plaintiff's sex was a motivating factor in her demotion.

USDA attempts to short-circuit scrutiny of Fiddick's conduct by arguing that his refusal to reconsider Plaintiff's demotion is not at issue in this case. *See* Def.'s Reply at 10, 14–15. But Fiddick's actions played a prominent role at trial, and Plaintiff argued in closing, without drawing an objection, that the jury could infer discrimination from Fiddick's inaction. Trial. Tr. at 622; *see also id.* at 660 (asserting that the "real decision-makers were the Performance Review Board and Mr. Fiddick"). There is simply no good reason for this court to ignore facts that were presented to the jury in deciding whether to sustain its verdict.

Lastly, USDA appears to argue that even if there were sufficient evidence for a reasonable jury to find that Plaintiff's sex motivated USDA's decision to remove her from the SES, the jury could *not* have reasonably concluded that USDA failed to meet its burden in showing that it would have removed Plaintiff from the SES anyway. *See Ponce*, 679 F.3d at 844–45. The court rejects this argument. The same evidence offered by Plaintiff to show pretext is relevant to the question

whether she would have been demoted anyway. *See id.* at 844. The jury here obviously weighed that evidence carefully—it found that Plaintiff's evidence was strong enough to establish her sex as a motivating factor for her demotion, but not so strong as to constitute a determinative factor. At this juncture, the court's role is confined to verifying that the jury's verdict was one that a reasonable jury could have reached. *Cf. Bowie v. Maddox*, 540 F. Supp. 2d 204, 208 (D.D.C. 2008). Because the evidence was not so one-sided in favor of USDA so as to make the jury's verdict unreasonable, the court declines to override the jury's verdict. Defendant's Motion for Judgment as a Matter of Law is denied.

        2.    *Rule 59*

            a.    <u>Legal standard</u>

The court turns now to USDA's alternative argument that a new trial is warranted under Rule 59. *See* Def.'s Mot. at 3, 29. Rule 59 allows a court to grant a new trial after a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Queen v. Schultz*, 310 F.R.D. 10, 21 (D.D.C. 2015) (alteration in original) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). "A new trial should be granted only where the court is convinced that the jury verdict was a seriously erroneous result and where denial of the motion will result in a clear miscarriage of justice." *Lee v. District of Columbia*, 19 F. Supp. 3d 281, 286 (D.D.C. 2015) (internal quotation marks omitted).

b.    The merits

In this case, USDA argues it is entitled to a new trial on two separate grounds:  unfair surprise and an inconsistent jury verdict.  The court begins with the claim of unfair surprise.

i.    *Unfair surprise*

"A party seeking a new trial on the grounds of unfair surprise must show that it was deprived of a fair hearing and demonstrate 'reasonably genuine surprise, which necessarily was inconsistent with substantial justice and which resulted in actual prejudice.'"  *Hancock v. Wash. Hosp. Ctr.*, 13 F. Supp. 3d 1, 9 (D.D.C. 2014) (quoting *Sedgwick v. Giant Food, Inc.*, 110 F.R.D. 175, 176–77 (D.D.C. 1986)).  Here, USDA asserts that it was caught off guard when, for the first time at trial, Plaintiff argued that the PRB discriminated against her.  Def.'s Mot. at 29–30.  As proof of surprise, USDA primarily points to: (1) Plaintiff's amended complaint, which lacks any mention of the PRB; (2) her initial disclosures, which do not list anyone on the PRB as a person "likely to have discoverable information," Fed. R. Civ. P. 26(a)(1)(A)(i); and (3) her response to an interrogatory that asked her to identify all potential witnesses and facts surrounding her demotion, which does not mention the Board.  *See* Def.'s Mot. at 5–7, 24, 29; *see also* Def.'s Mot., Ex. 5, ECF No. 151-5; Def.'s Mot., Ex. 6, ECF No. 151-6.  As a consequence of these omissions, USDA claims that it was unable to prepare and present evidence to rebut at trial Plaintiff's new theory about the PRB.  Def.'s Mot. at 29–30.

Although Plaintiff unquestionably could have done more to make known that she would ultimately argue that the PRB discriminated against her, USDA cannot reasonably claim that it was "genuine[ly] surprised" by that contention at trial.  *See id.* at 29.  While it is true that Plaintiff's pleading does not explicitly identify the Board as a discriminator, the Amended Complaint gave Defendant "fair notice" that the PRB's decision-making would be relevant to Plaintiff's

discrimination claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that the purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))). Specifically, the Amended Complaint made clear that Plaintiff would attempt to prove discrimination based on the disparate treatment between her and Wu. *See* Am. Compl. ¶ 16. USDA, of course, knew that the PRB gave Wu "the benefit of the doubt," but displayed no such goodwill towards Plaintiff. Thus, there can be little question that Defendant had notice that the PRB's decision-making would be a central feature of Plaintiff's case.

Additional facts weigh against USDA's claimed unfair surprise. At the summary judgment stage, USDA expressly recognized that Plaintiff would be pointing to the PRB as a discriminator. In a footnote in its opening brief, USDA wrote: "Plaintiff alleges that the fact that the Performance Review Board did not remove the Asian male from SES shows that the reasons for Plaintiff's removal were pretext for unlawful discrimination. In doing so, Plaintiff adds yet another set of decision-makers to the list of actors who she claims discriminated against her on the basis of . . . sex." *See* Def.'s Mot. for Summ. J., ECF No. 38, Def.'s Mem. of Points & Authorities in Supp. of Mot. for Summ. J., ECF No. 38-2, at 6 n.1 (citation omitted). That passage is a clear acknowledgment by USDA that Plaintiff would be using the PRB's actions to make out her discrimination claims.

Moreover, USDA anticipated that at trial it would need to rebut Plaintiff's contention that the PRB discriminated against her. USDA designated Charles Rawls—the Chairman of the Board at the time the PRB recommended removal of Plaintiff from the SES—as a witness in its Revised Pretrial Statement. *See* Def.'s Revised Pretrial Statement, ECF No. 91, at 8. Rawls was to testify about the Board evaluation process and explain "the considerations used by the 1999 PRB that

reviewed and approved of Ms. Banks's unsatisfactory rating and removal from the SES and that reviewed Gray's decisions regarding Mr. Wu's FY 1999 performance appraisal." *Id.* Rawls never testified, however, because Judge Roberts ruled that USDA had disclosed his name too late—a mere eight days before trial. *See Banks v. Vilsack*, 292 F.R.D. 158, 160 (D.D.C. 2013). Nothing prevented USDA from designating Rawls in a timely manner. *See id.* Thus, having recognized the importance of establishing that the PRB treated Plaintiff and Wu differently for a non-discriminatory reason, USDA cannot genuinely claim to have been unfairly surprised when, at trial, Plaintiff pointed to the PRB's evaluation process as proof of sex discrimination. The court therefore finds that USDA's contention that it suffered unfair surprise is without merit.

### ii. *Inconsistent verdict*

That leaves Defendant's second ground for seeking a new trial under Rule 59: internal inconsistencies in the jury's verdict. *See* Def.'s Mot. at 30–31. "Claims that a jury verdict is inconsistent impose a special obligation on the court to view the evidence in a manner that reconciles the verdicts if possible, and to grant a new trial if not." *Halcomb v. Woods*, 767 F. Supp. 2d 123, 132 (D.D.C. 2011) (quoting *Hundley v. District of Columbia*, 494 F.3d 1097, 1102 (D.C. Cir. 2007)); *cf. Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 119 (1963) ("[I]t is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." (internal quotation marks omitted)).[6] "'[S]uccessful claims of verdict inconsistency are rare,' arising only when the jury has reached conclusions that 'cannot

---

[6] While *Halcomb* analyzed inconsistencies in the jury's verdict as a ground for new trial, *see* 767 F. Supp. 2d at 132, the court notes that in *Hundley*, the D.C. Circuit addressed this question through the lens of Federal Rule of Civil Procedure 49(b), which specifies when an answer to a written question that is inconsistent with the jury's general verdict may warrant a new trial. *See Hundley*, 494 F.3d at 1102; Fed. R. Civ. P. 49(b)(3)–(4).

reasonably be reconciled or sustained.'" *Halcomb*, 767 F. Supp. 2d at 132 (alteration in original) (quoting *Hundley*, 494 F.3d at 1102).

In this case, the Verdict Form asked the jurors a series of questions. It first asked whether USDA removed Plaintiff from her SES position "because of intentional discrimination based upon her sex." Verdict Form ¶ 4. If the answer was "yes," the jury was asked to decide whether Plaintiff's sex was a determinative factor or a motivating factor in USDA's decision. *See id.* ¶ 5. If the jury chose "determinative factor," it proceeded straight to the question of damages; if the jury chose "motivating factor," it was directed to answer the following question:

> Although Plaintiff Denise Banks's sex was a motivating factor in the USDA's decision to remove her from her SES position, would the USDA have removed her from the position even if her sex had played no role in its decision?

*Id.* ¶ 6. If the answer to that question was "no," the jury was then instructed to enter an award of money damages. *Id.* ¶ 7. The jury here did exactly as instructed. It first found Plaintiff's sex to be a motivating, but not determinative, factor in USDA's decision. *See id.* ¶ 5. It then considered the question quoted above and answered it "no." *See id.* ¶ 6. It then proceeded to award $100,000 in damages. *See id.* ¶ 7.

According to USDA, the jury's answers are inconsistent with one another because the jury found that "Plaintiff's gender was not the 'but for' cause of her demotion by rejecting it as a 'determinative factor,'" yet simultaneously "decided that her demotion occurred because gender played a role in the decision—*i.e.*, gender was the but for reason for the decision." Def.'s Mot. at 31. But there is no inconsistency. The jury's answers clearly track the law of this Circuit

governing single versus mixed-motive cases. *See Ponce*, 679 F.3d at 845. As the Circuit has explained:

> In a mixed-motive case 42 U.S.C. § 2000e-5(g)(2)(B) provides the employer with a "limited affirmative defense" that "does not absolve it of liability, but restricts the remedies available to a plaintiff." More particularly, if the plaintiff makes out a violation under § 2000e-2(m), but the defendant "demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor," then the district court may grant declaratory or injunctive relief and attorney's fees, but "shall not award damages or issue an order requiring any . . . reinstatement, hiring, promotion, or payment."

*Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007) (alterations in original) (citations omitted). The jury's verdict is entirely consistent with this mixed-motive standard. After it concluded that Plaintiff's sex was a motivating factor in her demotion, the jury then answered whether USDA would have taken that same action "in the absence of the impermissible motivating factor." It answered that question "no." Thus, USDA manufactures an internal tension that does not exist.

Nevertheless, USDA further insists that the jury's "illogical and conflicting results" cannot be explained by the shifting burdens of proof, as Plaintiff claims, because "[t]he jury is not learned in jurisprudence regarding burdens of proof and the verdict form assigns no burdens in presenting the questions for the jury's consideration." Def.'s Reply at 25. But that argument ignores the jury instructions delivered by Judge Roberts. As relevant here, the instructions provided:

> Ms. Banks presents two theories as to how the USDA intentionally discriminated against her. . . .
> To show that . . . sex was a *determinative factor*, the plaintiff must show that if not for her . . . sex, the defendant would not have made its employment decision about her. . . .
> . . . [Y]ou should find for Ms. Banks if you find that the USDA's explanation is not the true reason and that but for intentional discrimination based on Ms. Banks's . . . sex, the USDA would not have removed Ms. Banks from her SES position in 2000.
> To show that . . . sex was a *motivating factor* in the defendant's decision, the plaintiff . . . . must only prove that

her . . . sex played an actual or substantial role in the defendant's decisions even though other factors may also have motivated the defendant.

    . . . .

    In order for you to find for the plaintiff, *the plaintiff must prove by a preponderance of the evidence* that one or more USDA officials intentionally discriminated against her. . . .

    . . . .

    If you find that . . . sex was a determinative factor in the defendant's decision . . . then you must determine an amount that is fair compensation for the plaintiff's damages.

    If you find that the plaintiff's . . . sex was a motivating, but not a determinative factor in the defendant's employment decision, then you must decide whether the plaintiff is entitled to damages. The plaintiff is not entitled to damages *if the defendant proves by a preponderance of the evidence* that it would have treated the plaintiff the same even if the plaintiff's . . . sex had played no role in the employment decision.

Instructions at 11–13, 15 (emphasis added); *see also* Trial Tr. at 610–14. These instructions provided the jury with the roadmap it needed to resolve the parties' dispute. The instructions clearly distinguished between Plaintiff's two theories of discrimination and identified the party that shouldered the burden of proof as to each theory. Therefore, the instructions provided all the "jurisprudence" necessary to resolve Plaintiff's sex discrimination claim.

*　　*　　*

For the foregoing reasons, the court denies Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial.

## III.    PLAINTIFF'S MOTION FOR EQUITABLE RELIEF

Having prevailed at trial, Plaintiff now seeks equitable relief. In her Motion, Plaintiff seeks: (1) reinstatement to the SES, (2) back pay, and (3) the removal of any reference to her 2000 demotion from her Official Personnel File. *See generally* Pl.'s Am. Mot. USDA concedes that, under the circumstances, expunging Plaintiff's demotion from her record is an appropriate

equitable remedy. *See* Def.'s Opp'n at 3 n.3. Thus, only reinstatement and back pay are at issue. The court will address each issue in turn.

### A.    Reinstatement

District courts have wide discretion to award equitable relief under Title VII, including reinstatement. *Barbour v. Merrill*, 48 F.3d 1270, 1278 (D.C. Cir. 1995); *see id.* at 1279; 42 U.S.C. § 2000e-5(g)(1). "The district court should fashion this relief so as to provide a victim of employment discrimination the most complete make-whole relief possible." *Barbour*, 48 F.3d at 1278. In Title VII cases, reinstatement is generally the "preferred remedy." *See Webb v. District of Columbia*, 146 F.3d 964, 976 (D.C. Cir. 1998). As with any general rule, however, there are exceptions. Because "a successful Title VII plaintiff is entitled only to *appropriate* equitable relief," *id.* (citing 42 U.S.C. § 2000e-5(g)(1)), the court must "careful[ly] consider[] . . . the circumstances of [each] particular case" to determine whether reinstatement is appropriate, *id.* For example, the court may consider "evidence of extreme animosity between the plaintiff and the defendant employer," or "evidence that the employer is genuinely dissatisfied with the plaintiff's job performance." *Banks*, 958 F. Supp. 2d at 83 (internal quotation marks omitted) (citing *Webb*, 146 F.3d at 977). Ultimately, the court's discretion must be "guided by sound legal principles" and "measured against the purposes which inform Title VII," including to "make persons whole for injuries suffered on account of unlawful discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416–18 (1975).

USDA opposes Plaintiff's reinstatement, citing her poor performance as a supervisory employee while she was in the SES and thereafter. Def.'s Opp'n at 3, 7–18. In addition to evidence related to Plaintiff's performance as an SES member, USDA offers evidence of "significant issues with [Plaintiff's] supervisory performance" following her demotion in 2000. *Id.* at 8. According

to USDA, Plaintiff has been tasked with supervisory duties in four different positions: (i) Chief of the Policy Division (2004–2005); (ii) Chief of the Employee Complaints Division (2005–2007); (iii) Director of the Data and Records Management Division (2009–2012); and (iv) Director of the Corporate Services Division (2012–2013). *Id.* at 7–8. Yet, in each of those positions, USDA contends, her work has been criticized. *Id.* at 8. Her purported supervisory deficiencies fall into three main categories. First, USDA contends that Plaintiff's "failures to provide timely performance evaluations and plans to her subordinates have continued since her demotion." *Id.* Second, USDA argues that Plaintiff has continued to show "her inability as a supervisor to ensure that EEO case materials are properly maintained and organized to allow for the proper functioning of the agency's EEO activities." *Id.* at 10. Third, USDA cites Plaintiff's "failure[] to communicate essential information to her supervisors." *Id.* at 13. As to each of these points, USDA cites to multiple evaluations, e-mails, and letters relating to events that have occurred since 1999. Plaintiff, for her part, vigorously pushes back against USDA's criticism of her supervisory performance. *See generally* Pl.'s Reply to Def.'s Opp'n to Mot. for Reinstatement, Back Pay, and Clean Record, ECF No. 178 [hereinafter Pl.'s Reply].

The court does not attempt, in the present posture,[7] to resolve whether Plaintiff is an outstanding supervisor, merely a good one, or terrible at supervising other employees. Nor does it need to. What the court takes away from the evidence submitted by the parties is that Plaintiff is, at the very least, a competent federal employee who now has served for more than 35 years in federal service. While surely she has made mistakes—who hasn't?—she is a respected colleague who is viewed as a positive contributor to the agency's mission. Plaintiff has been rated "Superior"

---

[7] Although the court asked whether either party wished to have an evidentiary hearing on the appropriateness of reinstatement as a remedy, both parties declined the invitation. *See* Hr'g Tr. (draft), Oct. 5, 2017, at 47–48, 54–56.

or "Outstanding" in 14 out of the 17 years since her demotion, *including* the time she served as Chief of the Policy Division from 2004 to 2005 and as Director of the Data and Records Management Division from 2009 to 2011—two of the periods during which Defendant alleges her supervisory performance was deficient. Pl.'s Reply at 3; *cf.* Def.'s Ex. MM at 8–9.[8]  While the three years for which she received a "fully successful" rating admittedly were periods in which she held a supervisory position, Plaintiff's performance appraisals indicate that she has been rated positively on *four* separate occasions when serving in a supervisory capacity.  *See* Def.'s Ex. MM at 4 (superior for FY 2005); *id.* at 8–9 (outstanding for FY 2010 and FY 2011); Pl.'s Reply, Ex. 23, ECF No. 178-1 [hereinafter Pl.'s Ex. 23] (outstanding for FY 2016).  Notably, Plaintiff has never been rated below "fully successful."  Pl.'s Reply at 3; *see* Def.'s Ex. MM.  More recently, in June 2016, USDA assigned her to a new supervisory position, Deputy Director of the Office of Adjudication.  Pl.'s Reply at 2; *see also* Pl.'s Reply, Ex. 31, ECF No. 178-9, at 106–08.  In this role, she received a summary rating of "outstanding" in her 2016 performance appraisal.  *See* Pl.'s Ex. 23.  The court doubts that USDA would continue to put Plaintiff in positions of supervisory authority if her management and administration skills were as poor as USDA now suggests.  *Cf. Kapche v. Holder*, 677 F.3d 454, 465 (D.C. Cir. 2012) (stating that "'as a general rule . . . neither reinstatement nor front pay is an appropriate remedy' if the employer has after-acquired evidence of wrongdoing 'of such severity that the employee in fact would have been terminated on those

---

[8] The court makes two clarifications here.  First, there is no performance appraisal for the period during which Plaintiff served as Chief of the Policy Division.  *See* Def.'s Ex. MM.  At least for purposes of back pay, USDA has conceded that it will treat Plaintiff's performance as "Outstanding," as it has been unable to locate Plaintiff's 2004 appraisal. Def.'s Exs., Ex. PP, ECF No. 175-41, at n.1.  The court finds no reason to assume otherwise for purposes of her reinstatement, or at least no reason to adopt USDA's argument that her performance was sub-par during this period, because Defendant does not point to any record evidence to support such a conclusion.  *See* Def.'s Opp'n at 7–15. Second, while Plaintiff is correct that she received "outstanding" ratings during the 2009–2010 and 2010–2011 years when she served as the Director of the Data and Records Management Division, *see* Def.'s Ex. MM at 8–9, the court notes that she was the Director until August 2012, *see* Def.'s Exs., Ex. J, ECF No. 175-10, at 56.  During the 2011–2012 appraisal period, she received a rating of "Fully Successful."  Def.'s Ex. MM at 10.

grounds alone if the employer would have known of it at the time of the discharge'" (quoting *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362–63 (1995))).

In the end, what USDA asks the court to do is to countenance continuing to deny Plaintiff a senior status that she once had earned and enjoyed, but lost due to sex discrimination. The court will not do so. The court therefore grants Plaintiff's request for reinstatement to the SES.

**B.     Back Pay**

Plaintiff also seeks "back pay in the amount of $701,025 as of December 8, 2016, plus any accrued back pay to the date of judgment and prejudgment interest at the Treasury rate." Pl.'s Am. Mot. at 1. To understand how Plaintiff reached the sum she seeks, as well as USDA's objections to such an award, some background is necessary.

In Plaintiff's initial motion for equitable relief, *see* ECF No. 161, she relied upon the expert opinion of financial analyst Joseph Rosenberg. *See* Joint Motion for Discovery and to Extend Briefing Schedule on Pl.'s Requests for Equitable Relief, ECF No. 162, at 2. Because Plaintiff did not disclose Rosenberg as a potential expert or produce certain Office of Personnel Management reports during discovery, USDA sought to strike the expert report and undisclosed documents. *See id.* In order to resolve the dispute and eliminate any prejudice caused by Plaintiff's untimely disclosures, the court granted the parties' request to re-open discovery with regard to Plaintiff's requests for equitable relief for a period of 75 days. *See id.*; Order, ECF No. 163.

During this discovery period, Rosenberg timely amended his original report twice—once on July 27, 2016, *see* Pl.'s Am. Mot., Ex. 6, ECF No. 170-1 [hereinafter Second Rosenberg Report], and again on August 23, 2016, after he was deposed by USDA, *see* Def.'s Opp'n, Ex. EE, ECF No. 175-31 [hereinafter Rosenberg Tr.]; Pl.'s Am. Mot., Ex. 7, ECF No. 170-2 [hereinafter Third Rosenberg Report]. More than a month after the extended discovery period closed,

Rosenberg filed another amended report, dated December 8, 2016 ("Late Rosenberg Report"). *See* Order, ECF No. 165, at 1 (setting October 26, 2016, as deadline for close of discovery); Pl.'s Am. Mot., Ex. 8, ECF No. 170-3 [hereinafter Late Rosenberg Report]. The court, however, excluded the Late Rosenberg Report as untimely, holding that the Third Rosenberg Report would be the operative expert report. *See* Hr'g Tr. (draft), Oct. 5, 2017, at 46. Because this ruling came *after* the close of briefing, Plaintiff's back pay calculation is based on the Late Rosenberg Report, including its $701,025 computation of back pay. *See* Pl.'s Am. Mot. at 1; Late Rosenberg Report at 23.

USDA raises a host of objections related to Rosenberg's computation of back pay in his Late Report, some of which presumably apply to the Third Rosenberg Report. In calculating Plaintiff's back pay, Defendant relies on an annotated demonstrative exhibit, which "correct[s]" any assumptions that the agency contends are flawed. Def.'s Opp'n at 26. Otherwise, it uses the assumptions underlying the calculations of the "most probable scenario" in the Third Rosenberg Report. *See id.*; Def.'s Exs., Ex. PP, ECF No. 175-41 [hereinafter Def.'s Ex. PP]. Based on its calculations, USDA argues that the maximum amount of back pay that Plaintiff is entitled to is $280,699.03. *See* Def.'s Opp'n at 18; Def.'s Ex. PP. The Third Rosenberg Report, by contrast, calculated a total of $625,384 in back pay based on the "most probable scenario." *See* Third Rosenberg Report at 4–5, 22.[9]

Based on the present record and the parties' briefs, the court cannot—and should not—attempt to calculate a final back pay award. Instead, the court will resolve USDA's objections to

_____

[9] Because the court finds reinstatement is an appropriate remedy here, it does not consider the substitute remedy of front pay. *Cf. Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 850, 853 (2001). Hence, the total award for the "most probable scenario" is less than $722,711, which Rosenberg reached by adding the total front and back pay awards together. *See* Third Rosenberg Report at 22.

Rosenberg's analysis and leave it to the parties to propose an appropriate award in light of the court's rulings.

### 1.    *Mitigating income calculation*

To begin, USDA objects to the source of the numbers used to calculate Plaintiff's mitigating income—that is, the amount of income Plaintiff has received since her demotion in 2000. *See* Def.'s Opp'n at 21–23.  In preparing his Second Report, Rosenberg identified Plaintiff as the source for her actual compensation from 2000 to 2008, which he testified was derived from Bank's pay stubs or W-2 tax forms.  *Id.* at 21–22; *see also* Second Rosenberg Report at 17; Rosenberg Tr. at 90–91.  In his Third Report, however, Rosenberg used the rates of pay set forth in SF-50s contained in Plaintiff's employment file.  Def.'s Opp'n at 22 (citing Third Rosenberg Report); *see* Pl.'s Am. Mot. at 14–15.  His Late Report, however, reverts back to Plaintiff's W-2 tax forms, as well as an income statement from the Social Security Administration, to tally mitigating income.  Def.'s Opp'n at 22 (citing Late Rosenberg Report at 3).  USDA argues that even though Rosenberg testified that using Plaintiff's SF-50s to fix Plaintiff's annual income would be "more accurate," his Late Report relies on the less accurate source of data.  *Id.*  USDA insists that the SF-50s' income figures be used to tabulate mitigating income.  *Id.* at 25.

This objection is largely moot, however.  The court has since excluded the Late Rosenberg Report, and USDA admits that the Third Report "us[es] the 'more accurate' rates set by [USDA] and reflected on Banks's SF-50s as the source of mitigating income."  *Id.* at 22, 25.  Thus, Plaintiff's mitigating income should be calculated based on the bonuses and salary rates set forth in Banks' SF-50s or other relevant record contained in her official personnel file.  *See id.* at 25.  The parties also should assume that Plaintiff did not receive any bonuses prior to 2005 in

calculating her mitigating income, given the lack of any SF-50s in her file reflecting such bonuses. *See* Def.'s Ex. PP at n.7.

2. *Pay not received due to administrative error*

USDA also takes issue with the income figures that Rosenberg used from 2003 to 2007. This objection relates to an administrative error that apparently resulted in a discrepancy between the pay Plaintiff received and the pay set by USDA. *See* Def.'s Opp'n at 23. From 2003 to 2008, Plaintiff's salary, set by the Office of Civil Rights, did not increase even as her GS pay levels increased. *Id.* Instead, Plaintiff's salary remained fixed at $125,246 per year. *Id.* In September 2008, Plaintiff raised this issue with her supervisor. *See* Def.'s Exs., Ex. JJ, ECF No. 175-36. USDA then issued a series of SF-52 forms to harmonize Plaintiff's salary for 2003 to 2008 to the corresponding appropriate GS-15, step 10, salary for those years. *See* Def.'s Opp'n at 23; Def.'s Exs., Ex. KK, ECF No. 175-37. USDA also amended the SF-50s in Plaintiff's official personnel file to reflect the changes. Def.'s Opp'n at 23. While Plaintiff received the salary-differential payment for the 2008 calendar year, she claims she did not receive those payments for 2003 to 2007. *See* Def.'s Exs., Ex. J, ECF No. 175-10 [hereinafter Def.'s Ex. J], at 88–89. She seeks to recoup those sums here by calculating a salary mitigation figure that reflects the lesser income actually received, as opposed to the greater income she should have received per her corrected SF-50s. *See* Def.'s Opp'n at 23–24; *cf.* Pl.'s Am. Mot. at 14–15. USDA opposes that request. It argues that Plaintiff is not entitled to back pay from 2003 to 2007 to the extent such pay arises out of the administrative errors. Such errors, USDA contends, are unrelated to Plaintiff's demotion. *See* Def.'s Opp'n at 23–24. The court agrees.

In considering appropriate equitable relief, the court's goal "is to restore the plaintiff[], as nearly as possible, to the circumstances [she] 'would have occupied if the wrong had not been

committed.'" *Caudle v. District of Columbia*, 825 F. Supp. 2d 73, 76 (D.D.C. 2011) (quoting *Lander v. Lujan*, 888 F.2d 153, 156 (D.C. Cir. 1989)). Here, the "wrong" Plaintiff suffered was demotion motivated by discriminatory animus. There is no connection between Plaintiff's demotion in 2000 and the loss of income she suffered from 2003 to 2007 due to administrative errors.[10] Thus, Plaintiff's back pay award should not account for such unrelated pay errors. Instead, as stated above, Plaintiff's mitigating income should be calculated by the rates set forth in her SF-50s.

### 3. *Projected compensation*

USDA's remaining objections relate to Rosenberg's calculation of Plaintiff's projected compensation, i.e., the income that she could have expected to earn had she not been wrongfully removed from her SES position. First, USDA attacks the premise of the "most probable" scenario relied upon by Rosenberg. *See* Def.'s Opp'n at 25. Under this scenario, Plaintiff would have received "outstanding" or "exceeds expectations"[11] ratings each year since her demotion in 2000. *Id.*; *see* Third Rosenberg Report at 4–5. As USDA points out, however, Plaintiff "did not receive such glowing reviews" in less demanding positions at the GS-15/10 level. Def.'s Opp'n at 25. Thus, the court agrees that it was improper for Rosenberg to assume that Plaintiff would have received such ratings as an SES member, when in fact she had not received them in her positions at the GS-15/10 level. Plaintiff's back pay award instead should be based on her actual

---

[10] Plaintiff claims she has "availed herself of every avenue known to her to have USDA correct the underpayment," Pl.'s Reply at 12, and testified that these claims were part of the instant action, *see* Def.'s Ex. J at 91–92. Assuming that to be true, Plaintiff still cannot dispute that on the eve of trial, she voluntarily dismissed "all issues in th[e] case except whether USDA discriminated against [her] based on her race and sex when it removed her in 2000 from her [SES] position . . . and demoted her to a GS-15 position." Pl.'s Mot. for Partial Voluntary Dismissal and Mot. in Limine, ECF No. 80, at 1; *see* Mem. Op. & Order, ECF No. 88. Additionally, the court takes no position on USDA's argument that the statutory time period to recover unpaid salary has now passed.

[11] The SES system uses the term "Exceeds Expectations" instead of "Superior" to describe the second highest appraisal score. *See* Def.'s Ex. PP at n.1.

performance rating for the year in question. For example, in 2006, 2007, and 2012, Plaintiff received a "fully successful" rating. *See* Def.'s Ex. MM at 5–6, 10. Accordingly, during those years, Plaintiff's projected compensation should be based on the estimated salary and award distributions for USDA career SES employees with a "fully successful" rating.

Second, USDA argues that Rosenberg, "based on no authority whatsoever[,] projected that [Plaintiff] would have received elevations in [Executive Schedule 'ES'] levels under the prior SES pay system each year from 2000 to 2004." Def.'s Opp'n at 25; *see* Def.'s Exs., Ex. HH, ECF No. 175-34, at 19–23; *see also* Third Rosenberg Report at 10 ("For years 2000–2003, step increases from ES-1 to ES-4 were assumed for all levels. . . . Salaries in 2004 weren't available and so were averaged between the 2003 and 2005 salaries for each level."); Rosenberg Tr. at 55 (explaining that the 2004 average was based, in part, on "what she would have earned as an ES-4 in 2003"). According to USDA, under the old ES-based SES pay system, promotions from one ES-level to the next (with a corresponding pay increase) did not occur as Rosenberg assumes. Def.'s Opp'n at 25. Specifically, Patricia Moore, Director of Executive Resources for USDA, testified that from 2000 to 2003, SES employees did not progress like a GS employee would expect to under the grading system, provided their performance was satisfactory. Def.'s Exs., Ex. NN, ECF No. 175-39 [hereinafter Def.'s Ex. NN], at 26–27; *see* Pl.'s Am. Mot. at 13. Instead, supervisors could make recommendations to the Board based upon the employee's performance, and the Board and ultimately the Secretary would have "sole discretion . . . to give them that progression to the next level." Def.'s Ex. NN at 27. Importantly, an SES employee who received a rating of "outstanding" would not necessarily progress to the next level. *Id.* at 27–28. Under the old system, progression was based upon a number of factors, including the structure of the office. *Id.* at 28. As Moore

testified: "If my boss was an ES-4, he probably wasn't going to give me, as a subordinate, an ES-5. So it was based on the position as well as my performance." *Id.*

Based on this uncontested testimony, the court agrees that Plaintiff's projected compensation should not rest on the assumption that her ES level would have increased each year from 2000 to 2003. To hold otherwise would require speculation not only that Plaintiff would have received high performance ratings during these years, but also that a myriad of other factors existed to warrant the level increase. Such speculation cannot form the basis of a back pay award.

Finally, USDA objects to Rosenberg's projected salary increases from 2010 to 2013, as SES salaries were frozen during this period by Executive Order. *See* Def.'s Opp'n at 25 (noting 2013 freeze); Def.'s Ex. PP at n.2 ("For years 2010 to 2013, USDA did not project a salary increase because all SES salaries were frozen by OPM during this period of time."). To the extent Rosenberg does not account for such pay freezes in his Third Report, his calculations are inaccurate. Plaintiff's back pay should reflect such pay freezes. *See generally* Def.'s Exs., Ex. OO, ECF No. 175-40 (2013 OPM Memorandum); *Freeze on Pay Adjustments for Federal Civilian Employees*, U.S. Office of Pers. Mgmt. (Dec. 30, 2010), https://www.chcoc.gov/content/freeze-pay-adjustments-federal-civilian-employees (2010 OPM Memorandum).

The foregoing rulings obviously change the analyses with respect to back pay, and the court is in a poor position to attempt to calculate how those rulings affect the ultimate award. Accordingly, the court directs the parties to meet and confer and attempt to reach a resolution on the amount of back pay in light of the court's rulings. In updating the back pay calculations, the parties shall also take into account the year 2017, as well any amounts that would be due to her in 2018 "through the date of judgment." *See Barbour*, 48 F.3d at 1279.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial is denied, and Plaintiff's Amended Motion for Reinstatement, Back Pay, and Clean Record is granted in part and denied in part.

The parties shall meet and confer and, no later than 30 days from this date, file a Joint Status Report indicating whether the parties have agreed on a total back pay amount in light of the court's rulings.  If the parties cannot agree on a back pay award, the Report shall specifically identify any disputes over calculations so that the court can make a final determination.

The court will enter final judgment in this matter upon resolution of the back pay award. The parties shall present the court with a draft order.

Dated:  February 22, 2018

Amit P. Mehta
United States District Judge